## JOHNSON *v.* ELKINS.

SPECIFIC PERFORMANCE; PARTIES; AMENDMENT; APPEAL AND ERROR.

On an appeal to this court from a decree of the lower court dismissing, without prejudice, a bill in equity for the specific performance of a sale of land in New Mexico, upon the ground that it was not sufficiently shown that the complainants stood in privity of estate with the legal representatives of a decedent under whom they claimed by reason of assignments from him, and had the right to maintain the suit,—at all events, without making such representatives parties,— this court, upon a review of the evidence, *affirmed* the decree, but, finding equities in the record deserving of protection, which would probably be barred in any other proceeding by the defense of laches or limitation, remanded the cause, with leave to the complainants to apply to the lower court within such time and under such terms as to that court might seem right and just, with a view to as speedy a determination of the case as possible, for leave to amend their bill,— the complainants to elect before the mandate went down whether they should apply for such leave, and, if they did not so elect, the decree of affirmance to be made absolute.

No. 1099. Submitted March 16, 1904. Decided May 3, 1904.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia dismissing without prejudice a bill in equity in a suit for the specific performance of a sale of lands in New Mexico. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Franklin H. Mackey, Mr. Thomas Smith,* and *Mr. Hayden Johnson* for the appellants.

*Mr. John B. Cotlon* and *Mr. William Frye White* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

This suit, which is a proceeding in equity to enforce specific performance of a sale of lands in the territory of New Mexico, was instituted in the supreme court of this District, on September 6, 1888; and the litigation, therefore, has now been in progress for nearly sixteen years, and the transactions upon which it is based occurred about thirty-three years ago.  In other words, a whole generation has passed away since the cause of controversy arose; and two of the principal participants in it, William Blackmore, of London, England, and General Benjamin F. Butler, have departed this life.  It would seem to be time to dispose of the case finally upon its merits, especially as we think that there are equities manifested in the record which should be protected and enforced.  But we find it impossible so to dispose of it.

We deem it unnecessary at this time to enter into any detailed statement of the facts, or into any elaborate discussion of the law that bears upon the case.  That has been well done in an able and well-considered opinion rendered by the learned justice who heard the cause in the court below, and which is to be found in the record before us.  It will suffice for our present purpose to state the outlines of the case very briefly.

Stephen B. Elkins, Samuel S. Smoot, and Ehud N. Darling were three of a syndicate of five persons who associated themselves in 1870 for the purchase of a tract of land in New Mexico, designated as the Mora grant, of which they became the owners to the extent of about 800,000 acres, the legal title being taken in the name of Elkins.  In 1871 Smoot sold part of

his interest to William Blackmore, of London, England; and subsequently, in pursuance of various negotiations extending to the year 1875, he sold his entire one-fifth undivided interest to Blackmore. There was written evidence of the transaction, but no formal conveyance, and there was an agreement in writing by Elkins to convey to Blackmore when requested so to do. There would seem to have been pending at the time, and continued for several years thereafter, negotiations by Blackmore for the purchase, not alone of Smoot's interest, but likewise of all the other interests of what may be called the Elkins' syndicate; but nothing seems to have come of these protracted negotiations.

Blackmore died in 1878. He seems to have been acting not only for himself, but also for an English syndicate of seven persons, of whom he himself was one, and of whom five, with two other persons, afterward and after the death of Blackmore, became incorporated under the English law as the Land Company of New Mexico, Limited, one of the complainants in this case. This company appears to have been organized for the purpose of acquiring, managing, and selling land in New Mexico, and it seems to have acquired, through Blackmore, interests in three or four other grants in that territory, besides the Mora grant. Blackmore, from time to time before its incorporation, had made conveyances of interests in these several grants to trustees for the benefit of the syndicate. No one of these conveyances was placed upon record in New Mexico, and there was not on the public records of that territory any paper whatever to show the acquisitions by Blackmore.

Dissensions arose between Blackmore and Smoot, apparently in consequence of double dealing on the part of the latter. Complications had also arisen between Smoot and Darling in consequence of loans by the latter to the former, for which Smoot undertook to assign to Darling one half of his interest in the Mora grant as security for his indebtedness, notwithstanding that he had already sold it to Blackmore; and both Smoot and Darling notified Elkins not to convey to Blackmore. Subsequently, in consequence of indebtedness by Smoot to General

Benjamin F. Butler, the latter acquired the possession and control of Smoot's interest in the Mora grant; and the Union Land & Grazing Company, a corporation organized by him under the laws of the State of New Jersey, and now, as it would seem, owned and controlled by his family or his legal representatives, holds the possession of the property.

Henry Johnson, claiming as trustee under various settlements and arrangements by Blackmore and his syndicate, and the trustees for the syndicate, and the Land Company of New Mexico, for which he holds as trustee, claiming to have succeeded to the right, title, and interest of Blackmore, instituted this suit in 1888, for specific performance of Smoot's contract with Blackmore by a conveyance from Elkins. The court below, without passing upon the merits of the controversy as between the assignees and legal representatives of Blackmore on the one side, and Darling and the Butler people on the other side, dismissed the bill of complaint, and we think rightly dismissed it, without prejudice, for the reason that it was not sufficiently shown that the complainants, here the appellants, stood in privity of estate or interest with William Blackmore, and had the right to maintain the suit, at all events without bringing in the legal representatives of William Blackmore, the alleged assignor, as parties to their suit.

Of course, it is essential to the validity of every legal proceeding that it should be instituted by the right person, and that the plaintiff or complainant should, upon the threshhold of the case, show his title to maintain it. If one claims as assignee, the assignment must be shown before a defendant can be called upon to answer to the merits. The proof is necessary for the protection of the defendant, so that he should not be called upon to answer again to another claimant, who may be the true owner of the thing in litigation. These are elementary principles which no one will dispute, but they have not been sufficiently observed in this case.

Neither Henry Johnson nor the Land Company of New Mexico ever received or claims to have at any time received any assignment or conveyance of interest from William Blackmore.

The company was not organized until after the death of Blackmore, and Henry Johnson's trusteeship did not begin until after the death of Blackmore. There is a deed in the record, the due execution of which has been admitted, between Johnson and the company on the one side, and two persons, Lloyd and Newman, former trustees for the syndicate, on the other side, whereby under a power duly reserved to them Lloyd and Newman appointed Johnson as their successor in the trust, in the creation of which Blackmore had participated. But, apart from the question whether Lloyd and Newman, as trustees for a syndicate, could, without the concurrence of Blackmore, or his representatives, as Blackmore himself was then dead, transfer their trust to another for the benefit of a corporation, in which the membership was not entirely the same as that of the syndicate, without the concurrence of all the members of that syndicate, the more important difficulty arises, that in the record there is no conveyance or assignment whatever, or any indication of a conveyance or assignment, by Blackmore of the Smoot interest in the Mora grant acquired by him, either to Lloyd and Newman, trustees, or to any of their predecessors in the trust; for there were previous trust arrangements. In one of these, a deed of May 28, 1872, executed by Blackmore, and by two persons, Lloyd and Fisher, as trustees, there is mention of a one-twelfth undivided interest acquired from Smoot by Blackmore in the Mora grant. In a deed of June 19, 1875, between Lloyd and Newman, as trustees, and Blackmore, and a syndicate of seven persons named, in which deed Newman was substituted as trustee in the place of Fisher, there is mention in a schedule annexed to the deed of three several grants in New Mexico, which are not further described or identified than as in the following terms:

"Cevolla Land Grant: five eighths of grant.

"Los Luceres Land Grant: undivided moiety and upwards in grant.

"Mora Land Grant: undivided one-eighth interest and upwards in grant, comprising 827,621 acres."

There is not the slightest indication in the deed, or anywhere

else in the record, that this "one-eighth interest and upwards" was derived from Smoot.

In the deed of April 21, 1879, made after the death of Blackmore, between Lloyd and Newman, as trustees, Johnson as substituted trustee, and the Land Company of New Mexico, is there for the first time distinct mention of the interest, and the whole and entire one-fifth interest of Smoot in the Mora grant as having been acquired by Blackmore. But this deed, of course, was not executed by Blackmore, and in the deed itself there is special mention of the fact that though this interest had been acquired by Blackmore, it had not been transferred by him to the trustees or to the syndicate, and that it remained to make arrangements with his legal representatives for such transfer. We are not advised by the record that any such arrangement has ever been made; and the necessary inference is that the title and interest in the Mora grant acquired by Blackmore from Smoot, except, perhaps, as to the one twelfth mentioned in the deed of May 28, 1872, yet remains, not in the assignees, but in the legal representatives of Blackmore.

It is very clear, therefore, that in the record which they have here made, the appellants have not shown any title in themselves from William Blackmore to more than one-twelfth part of the Mora grant derived from Smoot, if to that much; and that they are not entitled to maintain their bill, at least without amendment. It would seem to be necessary for them to make the legal representatives of William Blackmore parties to their suit, or in some way to show satisfactorily that these representatives have now no interest in the premises.

There are numerous other imperfections and irregularities in the record, which we do not deem it necessary here to specify. One of them, however, in view of the ultimate disposition of the litigation, it is well to mention.

To show their title from Blackmore the appellants offered in evidence, among other documents, three several deeds amounting to no more in legal effect than declarations of trust as to property alleged to have been conveyed to the trustees; but, by a strange oversight, the deeds of conveyance themselves, which

would best show their own purport, do not seem ever to have been offered in evidence. Not a single deed of conveyance or assignment by Blackmore to the trustees is introduced, and only by way of estoppel, he having participated in the execution of two of these deeds, can we hold that he conveyed the interests acquired by him. When the deeds of conveyance are shown to be in existence, this must be regarded as a most extraordinary way of proving their contents.

The decree appealed from must necessarily be affirmed. But, inasmuch as there are evident equities shown in the record which deserve to be protected and should be enforced, and the force of which the court below recognized by dismissing the bill "without prejudice to any rights which the complainants may have to any proceedings at law," and inasmuch as such rights or equities would now probably be barred in any other proceeding by the defense of laches or limitations, we deem it equitable, if the complainants so desire, to remand this cause to the supreme court of the District, with leave to them to apply to that court within such time and under such terms as to that court may seem right and just, with a view to as speedy a determination of the case as possible, for leave to amend their bill, and for such further proceedings in the premises as may be right and just and according to law.

The decree appealed from will be affirmed, with costs, and the cause will be remanded, if the complainants so elect, before the mandate goes down, for the further proceedings indicated. If the complainants do not so elect, the decree of affirmance will be made absolute. And it is so ordered. *Affirmed.*